Justice GINSBURG delivered the opinion of the Court.
*1577 This case concerns 8 U.S.C. § 1324, which makes it a federal felony to "encourag[e] or induc[e] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." § 1324(a)(1)(A)(iv). The crime carries an enhanced penalty if "done for the purpose of commercial advantage or private financial gain." § 1324(a)(1)(B)(i).[1]
Respondent Evelyn Sineneng-Smith operated an immigration consulting firm in San Jose, California. She was indicted for multiple violations of § 1324(a)(1)(A)(iv) and (B)(i). Her clients, most of them from *1578 the Philippines, worked without authorization in the home health care industry in the United States. Between 2001 and 2008, Sineneng-Smith assisted her clients in applying for a "labor certification" that once allowed certain aliens to adjust their status to that of lawful permanent resident permitted to live and work in the United States. § 1255(i)(1)(B)(ii).
There was a hindrance to the efficacy of Sineneng-Smith's advice and assistance. To qualify for the labor-certification dispensation she promoted to her clients, an alien had to be in the United States on December 21, 2000, and apply for certification before April 30, 2001. § 1255(i)(1)(C). Sineneng-Smith knew her clients did not meet the application-filing deadline; hence, their applications could not put them on a path to lawful residence.[2] Nevertheless, she charged each client $5,900 to file an application with the Department of Labor and another $900 to file with the U.S. Citizenship and Immigration Services. For her services in this regard, she collected more than $3.3 million from her unwitting clients.
In the District Court, Sineneng-Smith urged unsuccessfully, inter alia , that the above-cited provisions, properly construed, did not cover her conduct, and if they did, they violated the Petition and Free Speech Clauses of the First Amendment as applied. See Motion to Dismiss in No. 10-cr-414 (ND Cal.), pp. 7-13, 20-25; Motion for Judgt. of Acquittal in No. 10-cr-414 (ND Cal.), pp. 14-19, 20-25. She was convicted on two counts under § 1324(a)(1)(A)(iv) and (B)(i), and on other counts (filing false tax returns and mail fraud) she does not now contest. Throughout the District Court proceedings and on appeal, she was represented by competent counsel.
On appeal from the § 1324 convictions to the Ninth Circuit, both on brief and at oral argument, Sineneng-Smith essentially repeated the arguments she earlier presented to the District Court. See Brief for Appellant in No. 15-10614 (CA9), pp. 11-28. The case was then moved by the appeals panel onto a different track. Instead of adjudicating the case presented by the parties, the appeals court named three amici and invited them to brief and argue issues framed by the panel, including a question Sineneng-Smith herself never raised earlier: "[W]hether the statute of conviction is overbroad ... under the First Amendment." App. 122-124. In the ensuing do over of the appeal, counsel for the parties were assigned a secondary role. The Ninth Circuit ultimately concluded, in accord with the invited amici 's arguments, that § 1324(a)(1)(A)(iv) is unconstitutionally overbroad. 910 F.3d 461, 485 (2018). The Government petitioned for our review because the judgment of the Court of Appeals invalidated a federal statute. Pet. for Cert. 24. We granted the petition. 588 U.S. ----, 140 S.Ct. 36, 204 L.Ed.2d 1194 (2019).
As developed more completely hereinafter, we now hold that the appeals panel departed so drastically from the principle of party presentation as to constitute an abuse of discretion. We therefore vacate the Ninth Circuit's judgment and remand the case for an adjudication of the appeal attuned to the case shaped by the parties rather than the case designed by the appeals panel.
*1579 I
In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in Greenlaw v. United States , 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), "in both civil and criminal cases, in the first instance and on appeal ..., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Id ., at 243, 128 S.Ct. 2559. In criminal cases, departures from the party presentation principle have usually occurred "to protect a pro se litigant's rights." Id. , at 244, 128 S.Ct. 2559 ; see, e.g. , Castro v. United States , 540 U.S. 375, 381-383, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (affirming courts' authority to recast pro se litigants' motions to "avoid an unnecessary dismissal" or "inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis" (citation omitted)). But as a general rule, our system "is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." Id. , at 386, 124 S.Ct. 786 (Scalia, J., concurring in part and concurring in judgment).[3]
In short: "[C]ourts are essentially passive instruments of government." United States v. Samuels , 808 F.2d 1298, 1301 (CA8 1987) (Arnold, J., concurring in denial of reh'g en banc). They "do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties." Ibid.
The party presentation principle is supple, not ironclad. There are no doubt circumstances in which a modest initiating role for a court is appropriate. See, e.g. , Day v. McDonough , 547 U.S. 198, 202, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (federal court had "authority, on its own initiative," to correct a party's "evident miscalculation of the elapsed time under a statute [of limitations]" absent "intelligent waiver").[4] But this case scarcely fits that bill. To explain why that is so, we turn first to the proceedings in the District Court.
In July 2010, a grand jury returned a multicount indictment against Sineneng-Smith, including three counts of violating § 1324, three counts of mail fraud in violation of 18 U.S.C. § 1341, and two counts of willfully subscribing to a false tax return in violation of 26 U.S.C. § 7206(1). Sineneng-Smith pleaded guilty to the tax-fraud counts, App. to Pet. for Cert. 78a-79a, and did not pursue on appeal the two mail-fraud counts on which she was ultimately convicted. We therefore concentrate this description on her defenses against the § 1324 charges.
Before trial, Sineneng-Smith moved to dismiss the § 1324 counts. Motion to Dismiss in No. 10-cr-414 (ND Cal.). She asserted first that the conduct with which she was charged-advising and assisting *1580 aliens about labor certifications-is not proscribed by § 1324(a)(1)(A)(iv) and (B)(i). Being hired to file lawful applications on behalf of aliens already residing in the United States, she maintained, did not "encourage" or "induce" them to remain in this country. Id. , at 7-13. Next, she urged, alternatively, that clause (iv) is unconstitutionally vague and therefore did not provide fair notice that her conduct was prohibited, id. , at 13-18, or should rank as a content-based restraint on her speech, id. , at 22-24. She further asserted that she has a right safeguarded to her by the Petition and Free Speech Clauses of the First Amendment to file applications on her clients' behalf. Id., at 20-25. Nowhere did she so much as hint that the statute is infirm, not because her own conduct is protected, but because it trenches on the First Amendment sheltered expression of others.
The District Court denied the motion to dismiss, holding that Sineneng-Smith could "encourag[e]" noncitizens to remain in the country, within the meaning of § 1324(a)(1)(A)(iv), "[b]y suggesting to [them] that the applications she would make on their behalf, in exchange for their payments, would allow them to eventually obtain legal permanent residency in the United States." App. to Pet. for Cert. 73a. The court also rejected Sineneng-Smith's constitutional arguments, reasoning that she was prosecuted, not for filing clients' applications, but for falsely representing to noncitizens that her efforts, for which she collected sizable fees, would enable them to gain lawful status. Id. , at 75a.
After a 12-day trial, the jury found Sineneng-Smith guilty on the three § 1324 counts charged in the indictment, along with the three mail-fraud counts. App. 118-121. Sineneng-Smith then moved for a judgment of acquittal. She renewed, "almost verbatim," the arguments made in her motion to dismiss, App. to Pet. for Cert. 65a, and the District Court rejected those arguments "[f]or the same reasons as the court expressed in its order denying Sineneng-Smith's motion to dismiss," ibid . She simultaneously urged that the evidence did not support the verdicts. Motion for Judgt. of Acquittal in No. 10-cr-414 (ND Cal.), at 1-14. The District Court found the evidence sufficient as to two of the three § 1324 counts and two of the three mail-fraud counts. App. to Pet. for Cert. 67a.[5]
Sineneng-Smith's appeal to the Ninth Circuit from the District Court's § 1324 convictions commenced unremarkably. On brief and at oral argument, she reasserted the self-regarding arguments twice rehearsed, initially in her motion to dismiss, and later in her motion for acquittal. Brief for Appellant in No. 15-10614 (CA9), at 9-27, 35-41; Recording of Oral Arg. (Apr. 18, 2017), at 37:00-39:40; see supra , at 1579 - 1580. With the appeal poised for decision based upon the parties' presentations, the appeals panel intervened. It ordered further briefing, App. 122-124, but not from the parties. Instead, it named three organizations-"the Federal Defender Organizations of the Ninth Circuit (as a group)[,] the Immigrant Defense Project[,] and the National Immigration Project of the National Lawyers Guild"-and invited them to file amicus briefs on three issues:
"1. Whether the statute of conviction is overbroad or likely overbroad under the *1581 First Amendment, and if so, whether any permissible limiting construction would cure the First Amendment problem?
"2. Whether the statute of conviction is void for vagueness or likely void for vagueness, either under the First Amendment or the Fifth Amendment, and if so, whether any permissible limiting construction would cure the constitutional vagueness problem?
"3. Whether the statute of conviction contains an implicit mens rea element which the Court should enunciate. If so: (a) what should that mens rea element be; and (b) would such a mens rea element cure any serious constitutional problems the Court might determine existed?" Ibid.
Counsel for the parties were permitted, but "not required," to file supplemental briefs "limited to responding to any and all amicus/amici briefs ." Id. , at 123 (emphasis added). Invited amici and amici not specifically invited to file were free to "brief such further issues as they, respectively, believe the law, and the record calls for." Ibid. The panel gave invited amici 20 minutes for argument, and allocated only 10 minutes to Sineneng-Smith's counsel. Reargument Order in No. 15-10614 (CA9), Doc. No. 92. Of the three specified areas of inquiry, the panel reached only the first, holding that § 1324(a)(1)(A)(iv) was facially overbroad under the First Amendment, 910 F.3d at 483-485, and was not susceptible to a permissible limiting construction, id., at 472, 479.
True, in the redone appeal, Sineneng-Smith's counsel adopted without elaboration counsel for amici 's overbreadth arguments. See Supplemental Brief for Appellant in No. 15-10614 (CA9), p. 1. How could she do otherwise? Understandably, she rode with an argument suggested by the panel. In the panel's adjudication, her own arguments, differently directed, fell by the wayside, for they did not mesh with the panel's overbreadth theory of the case.
II
No extraordinary circumstances justified the panel's takeover of the appeal. Sineneng-Smith herself had raised a vagueness argument and First Amendment arguments homing in on her own conduct, not that of others. Electing not to address the party-presented controversy, the panel projected that § 1324(a)(1)(A)(iv) might cover a wide swath of protected speech, including political advocacy, legal advice, even a grandmother's plea to her alien grandchild to remain in the United States. 910 F.3d at 483-484.[6] Nevermind that Sineneng-Smith's counsel had presented a contrary theory of the case in the District Court, and that this Court has repeatedly warned that "invalidation for [First Amendment] overbreadth is 'strong medicine' that is not to be 'casually employed.' " United States v. Williams , 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (quoting Los Angeles Police Dept. v. United Reporting Publishing Corp. , 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999) ).
As earlier observed, see supra, at 1579, a court is not hidebound by the precise arguments of counsel, but the Ninth Circuit's *1582 radical transformation of this case goes well beyond the pale.
* * *
For the reasons stated, we vacate the Ninth Circuit's judgment and remand the case for reconsideration shorn of the overbreadth inquiry interjected by the appellate panel and bearing a fair resemblance to the case shaped by the parties.
It is so ordered.
Addendum of cases, 2015-2020, in which this Court called for supplemental briefing or appointed
amicus curiae
This Court has sought supplemental briefing: to determine whether a case presented a controversy suitable for the Court's review, Trump v. Mazars USA, LLP, --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 2020 WL 1978940 (2020) (ordering briefing on application of political question doctrine and related justiciability principles); Frank v. Gaos , 586 U.S. ----, 139 S.Ct. 475, 202 L.Ed.2d 363 (2018) (ordering briefing on Article III standing); Wittman v. Personhuballah , 576 U.S. 1093, 136 S.Ct. 25, 192 L.Ed.2d 996 (2015) (same); Docket Entry in Gloucester County School Bd. v. G. G. , O. T. 2016, No. 16-273 (Feb. 23, 2017) (ordering briefing on intervening Department of Education and Department of Justice guidance document); Kingdomware Technologies, Inc. v. United States , 577 U.S. 970, 136 S.Ct. 444, 193 L.Ed.2d 345 (2015) (ordering briefing on mootness); to determine whether the case could be resolved on a basis narrower than the question presented, Zubik v. Burwell , 578 U.S. ----, --- S.Ct. ----, 194 L.Ed.2d 599 (2016) (ordering briefing on whether the plaintiffs could obtain relief without entirely invalidating challenged federal regulations); and to clarify an issue or argument the parties raised, Google LLC v. Oracle America, Inc., --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 2020 WL 2105207 (2020) (ordering further briefing on the parties' dispute over the standard of review applicable to the question presented); Babb v. Wilkie , 589 U.S. ----, 140 S.Ct. 917, 205 L.Ed.2d 518 (2020) (ordering briefing on an assertion counsel made for the first time at oral argument about alternative remedies available to the plaintiff); Sharp v. Murphy , reported sub nom. Carpenter v. Murphy , 586 U.S. ----, 139 S.Ct. 626, 202 L.Ed.2d 452 (2018) (ordering briefing on the implications of the parties' statutory interpretations).
In rare instances, we have ordered briefing on a constitutional issue implicated, but not directly presented, by the question on which we granted certiorari. See Jennings v. Rodriguez , 580 U.S. ----, 137 S.Ct. 471, 196 L.Ed.2d 490 (2016) (in a case about availability of a bond hearing under a statute mandating detention of certain noncitizens, briefing ordered on whether the Constitution requires such a hearing); Johnson v. United States , 574 U.S. 1069, 135 S.Ct. 939, 190 L.Ed.2d 718 (2015) (in a case involving interpretation of the Armed Career Criminal Act's residual clause, briefing ordered on whether that clause is unconstitutionally vague). But in both cases, the parties had raised the relevant constitutional challenge in lower courts; the question was not interjected into the case for the first time by an appellate forum. In Jennings , moreover, the parties' statutory arguments turned expressly on the constitutional issue. Jennings v. Rodriguez , 583 U.S. ----, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). And in Johnson , although this Court had interpreted the Act's residual clause four times in the preceding nine years, there still remained "pervasive disagreement" in the lower courts about its application. Johnson v. United States , 576 U.S. 591, 601, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).
We have appointed amicus curiae : to present argument in support of the judgment *1583 below when a prevailing party has declined to defend the lower court's decision or an aspect of it, Seila Law LLC v. Consumer Financial Protection Bureau , 589 U.S. ----, 140 S.Ct. 450, 205 L.Ed.2d 265 (2019) ; Holguin-Hernandez v. United States , 588 U.S. ----, 139 S.Ct. 2779, 204 L.Ed.2d 1155 (2019) ; Culbertson v. Berryhill , 584 U.S. ----, 138 S.Ct. 2042, --- L.Ed.2d ---- (2018) ; Lucia v. SEC , 583 U.S. ----, 138 S.Ct. 923, 199 L.Ed.2d 620 (2018) ; Beckles v. United States , 579 U.S. ----, 137 S.Ct. 23, 195 L.Ed.2d 895 (2016) ; Welch v. United States , 577 U.S. 1098, 136 S.Ct. 892, 193 L.Ed.2d 782 (2016) ; McLane Co. v. EEOC , 580 U.S. ----, 137 S.Ct. 461, 196 L.Ed.2d 339 (2016) ; Green v. Brennan , 576 U.S. 1087, 136 S.Ct. 14, 192 L.Ed.2d 983 (2015) ; Reyes Mata v. Lynch, 576 U.S. 143, 135 S.Ct. 2150, 192 L.Ed.2d 225, reported sub nom. Reyes Mata v. Holder , 574 U.S. 1118, 135 S.Ct. 1039, 190 L.Ed.2d 907 (2015) ; and to address the Court's jurisdiction to decide the question presented, Montgomery v. Louisiana , 575 U.S. 933, 135 S.Ct. 1729, 191 L.Ed.2d (2015).

For violations of 8 U.S.C. § 1324(a)(1)(A)(iv), the prison term is "not more than 5 years," § 1324(a)(1)(B)(ii) ; if "the offense was done for ... private financial gain," the prison term is "not more than 10 years," § 1324(a)(1)(B)(i).

Sineneng-Smith argued that labor-certification applications were often approved despite expiration of the statutory dispensation, and that an approved application, when submitted as part of a petition for adjustment of status, would place her clients in line should Congress reactivate the dispensation. See Motion for Judgt. of Acquittal in No. 10-cr-414 (ND Cal.), p. 16.

See Kaplan, Civil Procedure-Reflections on the Comparison of Systems, 9 Buffalo L. Rev. 409, 431-432 (1960) (U.S. system "exploits the free-wheeling energies of counsel and places them in adversary confrontation before a detached judge"; "German system puts its trust in a judge of paternalistic bent acting in cooperation with counsel of somewhat muted adversary zeal").

In an addendum to this opinion, we list cases in which this Court has called for supplemental briefing or appointed amicus curiae in recent years. None of them bear any resemblance to the redirection ordered by the Ninth Circuit panel in this case.

The court sentenced Sineneng-Smith to 18 months on each of the remaining counts; three years of supervised release on the § 1324 and mail-fraud counts; and one year of supervised release on the filing of false tax returns count, all to run concurrently. She was also ordered to pay $43,550 in restitution, a $15,000 fine, and a $600 special assessment.

The Solicitor General maintained that the statute does not reach protected speech. Brief for United States 32. In the Government's view, § 1324(a)(1)(A)(iv) should be construed to prohibit only speech facilitating or soliciting illegal activity, thus falling within the exception to the First Amendment for speech integral to criminal conduct. Id. , at 22-26, 31 (citing United States v. Williams , 553 U.S. 285, 298, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) ).