[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13348
Non-Argument Calendar

_____

Agency No. A206-805-711

MELVIN ISIDRO RIOS-HERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 11, 2021)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Melvin Isidro Rios-Hernandez seeks review of a final order of the Board of Immigration Appeals affirming an immigration judge's denial of his application for asylum and withholding of removal under the Immigration and Nationality Act and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. After a review of the record, we affirm.[1]

## I

Mr. Rios-Hernandez was born in Anamorós, La Unión, El Salvador, on November 6, 2001. He entered the United States without valid travel documents on June 18, 2014.

After some initial immigration proceedings, in January of 2015 Mr. Rios-Hernandez filed an application for asylum and withholding of removal under the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1101 et seq., and withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (the "CAT"), *see* 8 C.F.R. § 1208.16(c).

During the merits hearing before an immigration judge, Mr. Rios-Hernandez argued that he feared that, if returned to El Salvador, he would be persecuted due to

---

[1] As we write for the parties, we set out only what is necessary to address Mr. Rios-Hernandez's arguments.

2

his membership in two particular social groups: (i) "the Rios-Hernandez family," and (ii) "neglected and abandoned young males from Anamorós." AR at 000120–21. Mr. Rios-Hernandez testified about his family's history in El Salvador, its interactions with the local gang, his and his family's reasons for emigrating to the United States, and his fear of persecution. Moreover, he argued that, if sent back to El Salvador, he could be tortured.

After the hearing, the immigration judge issued her decision. She found Mr. Rios-Hernandez credible but ruled against him on the merits. On asylum and withholding of removal, the immigration judge concluded that Mr. Rios-Hernandez's proposed groups did not qualify as particular social groups under the INA. She also determined that Mr. Rios-Hernandez had not established that he was a member of "neglected and abandoned young males from Anamorós." Moreover, the immigration judge found that, even if the proposed particular social groups were cognizable, Mr. Rios-Hernandez had not established that his alleged persecution would be on account of his membership in those particular social groups.

The immigration judge also denied Mr. Rios-Hernandez's request for relief under the CAT on two grounds. First, she found that Mr. Rios-Hernandez had not established that the government of El Salvador instigates, consents, or acquiesces to any torturous gang conduct. Second, the immigration judge determined that the harm that Mr. Rios-Hernandez had experienced in the past did not amount to torture under

3

the CAT—a finding that cut against his argument that he would likely be tortured if returned to El Salvador.

Mr. Rios-Hernandez appealed the immigration judge's decision to the Board of Immigration Appeals. The BIA dismissed his appeal, adopting and affirming the immigration judge's decision. It also identified the portions of the immigration judge's reasoning that it found most persuasive. Regarding asylum and withholding of removal, the BIA noted that it agreed with the immigration judge that even if Mr. Rios-Hernandez's proposed groups qualified as particular social groups under the INA, he had not established that any persecution he suffered or feared would be on account of his membership in those groups. As to CAT relief, the BIA explained that it agreed with the immigration judge that the past harm that Mr. Rios-Hernandez had suffered did not amount to torture, and that he had not established that, if removed, he would be tortured with the consent or acquiescence of the government of El Salvador.

## II

We generally review only the decision of the BIA, but we also review the decision of the immigration judge when the BIA expressly adopts it. *See Mohammed v. U.S. Atty. Gen.*, 547 F.3d 1340, 1344 (11th Cir. 2008). Here, the BIA expressly adopted and affirmed the immigration judge's decision. As a result, we review the decisions and reasoning of both the BIA and the immigration judge. *See id.*

We review the BIA's and immigration judge's conclusions of law—including whether a group qualifies as a "particular social group" under the INA—de novo. *See Gonzalez v. U.S. Atty. Gen.,* 820 F.3d 399, 403 (11th Cir. 2016). We review factual findings for substantial evidence. *See Mohammed*, 547 F.3d at 1344. Accordingly, "findings of fact . . . may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

## III

In his petition for review, Mr. Rios-Hernandez challenges the BIA's and immigration judge's decisions on his request for asylum and withholding of removal under the INA and his request for relief under the CAT. We address each argument below.

## A

With regard to asylum and withholding of removal, Mr. Rios-Hernandez argues, among other things, (i) that the immigration judge erred in concluding that the "Rios-Hernandez family" group did not qualify as a particular social group under the INA, (ii) that the immigration judge erred in concluding that he was not a member of the "neglected and abandoned young males from Anamorós" group, and (iii) that the BIA and immigration judge erred in finding that he had not established

5

that his purported persecution was on account of his proposed particular social groups. We disagree.

To be granted asylum, an alien must prove that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A) and (B)(i). The INA defines "refugee" as a person who is outside of his country, "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). To establish that he is a member of a "particular social group," an alien must prove that he is a member of a group that is (i) "composed of members who share a common immutable characteristic," (ii) "defined with particularity," and (iii) "socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014). *See also Gonzalez*, 820 F.3d at 404.

To receive a withholding of removal to a particular country, an alien must prove that his "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Where an applicant fails to meet the "well-founded fear" standard for asylum, he is generally precluded from qualifying for withholding of removal. *See Mazariegos v. Off. of U.S. Atty. Gen.*, 241 F.3d 1320, 1324 (11th Cir. 2001).

6

We deny Mr. Rios-Hernandez's petition for review because he has not convincingly challenged the immigration judge's conclusion that his proposed particular social groups were not cognizable under the INA. The immigration judge determined that the "Rios-Hernandez family" group did not qualify as a particular social group under the INA because it was not defined with particularity nor socially distinct within Salvadoran society. Mr. Rios-Hernandez argues that the immigration judge's determination on the "particularity" element is internally contradictory, but he does not challenge the immigration judge's determination on the "socially distinct" element. In our adversarial system of adjudication, we follow the principle of party presentation. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). In other words, we do not construct arguments that parties have not themselves raised. *See id.* Social distinction is necessary for a group to qualify as a particular social group under the INA. *See Gonzalez*, 820 F.3d at 404. Because Mr. Rios-Hernandez does not challenge the immigration judge's conclusion on that element, he cannot succeed in his petition for review as it relates to his first proposed particular social group. *Cf. Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (explaining that an appealed decision will be affirmed where the appellant does not challenge properly all the grounds on which the decision is based).

As to the "neglected and abandoned young males from Anamorós" group, the immigration judge concluded that it was not cognizable because its members did not

7

share an immutable characteristic, it was not defined with particularity, and it was not socially distinct within Salvadoran society. The immigration judge also found that Mr. Rios- Hernandez had not established that he was a member of that group.

Before us, Mr. Rios-Hernandez challenges only the immigration judge's conclusion about his group membership. He does not challenge the immigration judge's conclusion that the group lacked all three elements necessary to qualify as particular social group. Accordingly, however we might rule on his membership argument, Mr. Rios-Hernandez's petition for review fails in regard to his second proposed particular social group. *See Sapuppo*, 739 F.3d at 680.

Mr. Rios-Hernandez's failure to establish that his proposed groups qualify as particular social groups under the INA is dispositive on his requests for asylum and withholding of removal.[2]

## IV

Mr. Rios-Hernandez also contends that the BIA and immigration judge erred in denying his request for CAT relief. He says that he would be tortured if he is removed to El Salvador because the severe violence perpetrated by local gangs can be a form of torture. Additionally, he alleges that El Salvador would *de facto* be acquiescing to his torture because it has been indifferent to the violence perpetrated

---

[2] As a result, we do not address his remaining arguments relating to those requests.

by local gangs. We disagree.

Under the CAT, an alien's removal to a designated country is withheld if he shows that it is more likely than not that upon removal to that country he would be tortured. *See* 8 C.F.R. § 1208.16(c)(2). For an act to constitute "torture" under the CAT, it must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Where, as in Mr. Rios-Hernandez's case, an alien fears torture by private actors, he must show that the government has acquiesced to that torture. *See id. See also Reyes-Sanchez v. U.S. Atty. Gen.*, 369 F.3d 1239, 1242–3 (11th Cir. 2004). A government acquiesces to torture when it "breaches its responsibility to intervene." *Rodriguez Morales v. U.S. Atty. Gen.,* 488 F.3d 884, 891 (11th Cir. 2007). But "[a] government does not acquiesce to torture where it actively, albeit not entirely successfully, combats the alleged torture." *Lingeswaran v. U.S. Atty. Gen.*, 969 F.3d 1278, 1294 (11th Cir. 2020).

Mr. Rios-Hernandez's challenge to the BIA's and the immigration judge's decision on CAT relief fails because there is substantial evidence in the record that supports the finding that El Salvador would not acquiesce to his torture by local gangs. In fact, the immigration judge cited to various portions of the record which evince that, if anything, El Salvador has taken a heavy-handed approach to

9

combatting gang violence. For example, beginning in April 2016, El Salvador prevented communication between imprisoned gang members and outside members, suspended communication between inmates and their families and attorneys, and isolated known gang leaders in higher security prisons. The immigration judge's conclusion is also supported by other evidence in the record. Though its measures have not been fully effective, the evidence does not show that El Salvador has been passive or indifferent to gang violence. Hence, the record does not compel reversal of the BIA's and immigration judge's finding that Mr. Rios-Hernandez failed to establish that El Salvador would acquiesce to his torture by local gangs.

Because our ruling on this point is dispositive on Mr. Rios-Hernandez's petition for review as it relates to his request for CAT relief, we do not address his remaining arguments relevant to that request.

## V

For the foregoing reasons, we deny Mr. Rios-Hernandez's petition for review. **PETITION DENIED.**