# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47941

|  |  |  |
|---|---|---|
| **ANNE M. HERR,** | ) | |
| | ) | |
| Petitioner-Respondent, | ) | **Boise, August 2021 Term** |
| | ) | |
| v. | ) | **Opinion Filed: October 8, 2021** |
| | ) | |
| **JOHN E. HERR,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Jay P. Gaskill, District Judge. Lori Meulenberg, Magistrate Judge.

The decision of the district court is <u>affirmed</u>.

Madsen Law Offices, P.C., Coeur d'Alene, for appellant. Henry D. Madsen argued.

Powell & Reed, P.C., Sandpoint, for respondent. Todd Reed argued.

_____

BRODY, Justice.

After Anne Herr petitioned for divorce from John Herr, John asserted that two investment accounts opened during the marriage were his separate property. The magistrate court disagreed, finding that separate and community property had been commingled in the accounts, triggering the presumption that all assets in the accounts were community property. Because John did not present an argument to rebut this presumption, the magistrate court ordered the accounts divided equally between the parties. The district court affirmed the magistrate court's decision on intermediate appeal. John argues that the district court's decision should be reversed because evidence sufficient to trace his separate property was admitted at trial. We affirm because John was obligated to present an argument at trial to rebut the presumption that the assets were

1

community property, not merely to provide evidence from which an argument might have been made.

## I. FACTUAL AND PROCEDURAL HISTORY

Anne petitioned for divorce from John in July 2018 and requested a division of their property. The dispute here centers on the division of two investment accounts opened during the parties' marriage.

Account No. 178-XXXXX-1-2 (hereinafter, "first account") was created in February 2011, and funded solely with the proceeds of an inheritance from John's mother. According to John, the parties did not contribute additional funds to this account after its creation. However, in March 2015, John's brother Charles (who maintained an investment account at the same financial services firm as John) transferred a gift of mutual fund shares worth $99,945.04 directly into the first account. The record contains only four monthly account statements for the first account, covering December 2014, March 2015, November 2018, and December 2018. The statements show the account contained a variety of asset types, including money market and deposit accounts, an annuity, stocks, mutual funds, and other securities.

Account No. 178-XXXXX-1-0 (hereinafter, "second account") was created in January 2016 by "splitting the [first account] into two accounts." As with the first account, John testified that no additional funds were deposited into the account by the parties after its creation. The record contains only two monthly statements for the second account, covering November 2018 and December 2018.

In February 2019, the magistrate court held a trial at which Anne, John, and Charles testified. Several exhibits were also admitted into evidence, including the account statements discussed above, a transfer authorization form for the gift of mutual funds from Charles, and the parties' 2016 joint income tax return. In lieu of closing arguments, the parties submitted post-trial briefs.

The magistrate court issued an order granting the divorce and deciding the property issues in March 2019. It found that the first account was initially John's separate property because it had been created with proceeds from his inheritance. However, the magistrate court held that the gift from Charles was community property, based on testimony that it was given to both parties for the purpose of remodeling their home. Further, because the gift was commingled with John's separate property in the first account—and John made no attempt to trace the portion

2

of the account that was his alone—the magistrate court deemed the entire first account to be community property:

> The burden is on the party claiming it is separate property, [John], to prove it remained his separate property with reasonable certainty and particularity. [John] has failed to meet this burden. There has been no tracing presented to this court to determine otherwise. The evidence provides no accounting regarding what portion of the funds remaining were solely from the inheritance and what portion is from the gift of funds from Charles . . . . The court finds that these funds are community property[.]

Likewise, the magistrate court found the second account was community property because it had been created from the first account after commingling, and John failed to trace his separate property in this account as well. As such, the magistrate court ordered both accounts divided equally between the parties.

John appealed the decision of the magistrate court to the district court. John elected not to challenge the magistrate court's determination that Charles' gift was a gift to the community. The district court affirmed the magistrate court's decision because, as the magistrate court found, John failed to trace his separate property.

After a substitution of counsel, John filed a petition for rehearing and brief in support of the petition. The district court denied the petition for rehearing and John filed a timely notice of appeal to this Court.

## II. STANDARD OF REVIEW

Where a district court has affirmed the decision of a magistrate court on intermediate appeal, "this Court must focus on the findings of fact and conclusions of law made in the magistrate court proceeding and determine whether they were (1) supported by the evidence in the record and (2) consistent with the law." *State v. Dacey*, ___ Idaho ___, ___, 491 P.3d 1205, 1210 (2021) (citing *Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013)). If so, we affirm the district court's decision as a matter of procedure; if not, we must reverse. *Id.* at ___, 491 P.3d at 1209.

## III. ANALYSIS

### A. The district court correctly affirmed the magistrate court's order dividing the first and second accounts.

Idaho recognizes two categories of property in marriage: separate and community. Separate property is property acquired by one spouse before marriage, as well as any property

3

acquired by either spouse during the marriage through gift, bequest, devise, or descent. I.C. § 32-903. In divorce, separate property remains the sole property of the spouse who acquired it. *Id.* Community property is "[a]ll other property acquired after marriage by either [spouse]." I.C. § 32-906(1). This includes accrued interest or dividend payments earned from a spouse's separate property. *See Simplot v. Simplot*, 96 Idaho 239, 242–43, 526 P.2d 844, 847–48 (1974). In divorce, courts must divide community property substantially equally between the spouses, absent "compelling reasons otherwise." I.C. § 32-712(1).

When separate property is commingled with community property, courts presume all the commingled property is community property. *See Houska v. Houska*, 95 Idaho 568, 570, 512 P.2d 1317, 1319 (1973) (citing *Stahl v. Stahl*, 91 Idaho 794, 430 P.2d 685 (1967)). However, the presumption may be overcome if a party can demonstrate the separate character of his property with "reasonable certainty and particularity" through tracing. *Id.*

Here, John contends that application of the community property presumption was erroneous because the account statements, transfer authorization form, and 2016 joint income tax return were admitted at trial as exhibits. But notably John does not claim to have *argued* in the magistrate court that his separate property could be traced through a review of these exhibits. Nor could he. While John's post-trial brief noted the commingling doctrine, acknowledged his burden to rebut the presumption, and disputed Anne's position that Charles' gift was a gift to the community, it made no attempt to distinguish between assets derived from John's inheritance and those derived from Charles' gift. Nevertheless, John contends that the magistrate court erred because a "simple review" of the admitted exhibits would have revealed the separate character of property in the accounts.

"In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). As such, it is presumed "that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)) (brackets omitted). In other words, a court's role is to sit as a neutral arbiter, not to act as an additional advocate sifting through each party's evidence to determine the most persuasive arguments that might have been made. Here, John's argument flouts the principle of party presentation. Simply put, the magistrate court did not err by failing to see what John made no attempt to show.

John tries to avoid this straightforward conclusion in a handful of ways. First, he claims that the magistrate court "cut off" tracing arguments at trial by stating it would review the exhibits admitted into evidence. There is no merit in this contention. To begin, it is misleading to suggest that arguments were "cut off" at trial. Because the parties submitted post-trial briefs in lieu of closing arguments, there were no arguments at trial for the magistrate court to cut off. In any event, the magistrate court's general statement that it would review the parties' exhibits did not somehow relieve John of the obligation to inform the court as to what evidence it should review or what that evidence would prove.

Second, John speculates that the magistrate court refused to consider his exhibits because it erroneously believed that expert testimony from an accountant was required, as a matter of law, in order to perform tracing. From the following statements at oral argument, it appears that John's argument rests on the assumption that the separate character of his property was so obvious that the magistrate court only could have ruled as it did if it were mistaken about the need for an expert witness:

> In this situation it's just a mathematical calculation. . . . Clearly by the evidence you have $600,000, a little over $600,000 in inheritance that Mr. Herr received from his mother and then this gift of $100,000 that came out from his brother, . . . which was just [brokerage] accounts being transferred from here to here.
>
> . . .
>
> At the most shouldn't [Anne] only be getting $50,000 of the $100,000 gift that was initially given?  I mean, why are we giving her half of his inheritance based on that? . . . [I]t's an unfair and it's an unjust decision and it doesn't require a professional to come in and [perform the tracing].

This argument suggests that John is mistaken as to the nature of tracing, not that the magistrate court mistakenly believed tracing can only be accomplished with expert testimony. John's arithmetic likely would be adequate if his inheritance and the gift from Charles were cash locked in a safe and left undisturbed. But that is not the case. The accounts contained a mix of investment assets, many of them subject to fluctuation in value such as stocks, mutual fund shares, and other securities. John's argument based on the approximate aggregate value of the accounts disregards the nature of the property within them. Further, John's argument fails to account for the fact that the inheritance and gift were not the only sources of property in the accounts. As demonstrated by the account statements, many of the assets earned interest or paid

5

dividends—both presumptively community property because they were acquired during marriage—and this income was reinvested into the accounts.

And even if the math were as simple as dividing the assets attributable to Charles' gift in two (whatever the exact value may have been), it is not clear from the exhibits which assets these are. While John testified that the parties did not contribute to the accounts after their creation, the particular assets within them changed over time. The November 2018 statements show investments in approximately two dozen securities that do not appear in the account statements from 2014 and 2015 or in the transfer authorization form for Charles' gift. If John's testimony is to be credited, then shares in these securities must have been purchased with proceeds from the sale of other assets within the accounts. However, from the smattering of account statements in the record, there is no way to determine whether they were acquired with the proceeds of community or separate property.

Third, John attempts to trace his separate property through an argument on appeal that was not advanced in the magistrate court. John points out that all the particular assets Charles transferred into the first account appear to have been sold at some point before November 2018. Thus, John argues all that remains in the first account must be his separate property. Anne argues—and we agree—that this argument is waived because no tracing argument was raised in the magistrate court. *See State v. Gertsch*, 137 Idaho 387, 395, 49 P.3d 392, 400 (2002) ("The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal."). However, we observe that even this untimely argument is unavailing. As we have already noted, the assets in the accounts changed over time. Establishing that the gifted assets were sold does not establish that what remains is John's separate property.

At bottom, John bore the burden to demonstrate—through evidence *and* argument—which portions of the accounts were his separate property. He plainly did not meet that burden. Thus, the magistrate court did not err in ordering the accounts divided equally between the parties and the district court did not err in affirming that decision.

**B. Anne is entitled to attorney fees on appeal.**

Anne seeks an award of attorney fees on appeal under Idaho Code section 12-121. Under section 12-121, we award attorney fees to the prevailing party if we find that an appeal was "pursued, defended, or brought frivolously, unreasonably, or without foundation." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 632–33, 329 P.3d 1072, 1080–81 (2014)

6

(quoting *Owner–Operator Indep. Drivers Assn. v. Idaho Pub. Utils. Comm'n*, 125 Idaho 401, 408, 871 P.2d 818, 825 (1994)). Here, John failed to present argument to the magistrate court in support of the position he now advocates on appeal, in direct contravention of the party presentation principle, and his (unpreserved) tracing argument was unavailing. Thus, we find that John's appeal was unreasonable and without foundation and we award attorney fees to Anne as the prevailing party.

## IV. CONCLUSION

The decision of the district court is affirmed. We also award Anne attorney fees on appeal pursuant to Idaho Code section 12-121 and costs pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN CONCUR.