[Cite as *Wysong v. Dayton City Hall*, 2025-Ohio-2002.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| STEPHANIE A. WYSONG | Case No. 2025-00002PQ |
| Requester | Judge Lisa L. Sadler |
| v. | <u>DECISION AND ENTRY</u> |
| CITY OF DAYTON CITY HALL | |
| Respondent | |

{¶1} Requester—a self-represented litigant—partially objects to a Special Master's Report and Recommendation in this public-records case. The Court overrules Requester's objections and adopts the Report and Recommendation for reasons discussed below.

### I.     Background and Procedural History

{¶2} On January 2, 2025, Requester filed a Complaint against Respondent under R.C. 2743.75(D), alleging a denial of access to public records in violation of R.C. 149.43(B). The Court appointed a Special Master who referred the case for mediation. After mediation failed to successfully resolve all disputed issues between the parties, the case was returned to the docket of the Special Master.

{¶3} On April 30, 2025, the Special Master issued a Report and Recommendation (R&R). The Special Master notes that Requester made two multi-part requests to Respondent for public records related to a photo traffic enforcement program that is the subject of a contract between the City of Dayton and a private company since 2017. (R&R 1, 2.) The Special Master states,

> Between them, the requests sought eight categories of records. Those
> requests were made on September 18 and 21, 2024. Dayton processed

those requests on a consolidated basis and on November 6, 2024, produced a handful of records responsive to the requests in one of the categories and indicated that it considered all the requests closed. *PQ Miscellaneous, Corrected and Consolidated Response to the Special Master*, filed April 1, 2025 (*"Requester's Evidence"*), pp. 5-9,14-22. (R&R, 2.) The Special Master has determined that Requester's claim for production of records should be granted, in part, and the Special Master has recommended that the Court:

    A. Order respondent to retrieve and produce, on a request by request basis, all records responsive to the requests reproduced in the appendix to [the Report and Recommendation] or to certify, on a request by request basis, that no responsive records exist.

    B. Order respondent to take those actions within 30 days of the entry of a judgment regarding [the] report and recommendation.

    C. Order respondent to certify its performance of those actions within 40 days of the entry of a judgment regarding [the] report and recommendation.

    D. Find that respondent violated R.C. 149.43(B)(1)'s mandate that records be produced within a reasonable period of time,

    E. Order that requester recover her filing fee and costs from respondent.

    F. Order respondent to pay the balance of the costs of this case, and;

    G. Deny all other relief.

(R&R, 12-13.)

{¶4} On May 1, 2025, Requester filed written objections to the Report and Recommendation. Accompanying Requester's written objections is a Certificate of Service in which Requester certifies that a copy of Requester's objections was served on Respondent's counsel "by the Court's electronic notification system / email."[1]

---

[1] The Court previously has interpreted its local rules to mean that the service of documents through the Court's efiling system is ineffective. *See Lerussi v. Calcutta Volunteer Fire Dept.*, 2024-Ohio-1695, ¶ 1, fn. 1 (Ct. of Cl.).

Requester's service of objections to a Report and Recommendation by email fails to conform with requirements contained in R.C. 2743.75(F)(2). Under R.C. 2743.75(F)(2), either party "may object to the

{¶5} Respondent has not filed a timely response to Requester's written objections.[2] Neither has Respondent filed timely objections to the Report and Recommendation.

{¶6} Requester's objections are now before the Court for determination. *See* R.C. 2743.75(F)(2) ("[t]he court, within seven business days after the response to the objection is filed, shall issue a final order that adopts, modifies, or rejects the report and recommendation").

## II.     Law and Analysis

### A.  Legal Standard and Requester's Objections.

{¶7} The General Assembly has created an alternative means to resolve public-records disputes through the enactment of R.C. 2743.75. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 11. *See* R.C. 2743.75(A). Under Ohio law a requester "must establish entitlement to relief in an action filed in the Court of Claims under R.C. 2743.75 by clear and convincing evidence." *Viola v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-4210, ¶ 16 (8th Dist.), citing *Hurt v. Liberty Twp.*, 2017-Ohio-7820, ¶ 27-30 (5th Dist.). *See Welsh-Huggins* at ¶ 32. It is a requester's burden to prove, by clear and convincing evidence, that the requested records exist and are public records maintained by a respondent. *See State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 8.

{¶8} A public-records custodian has the burden to establish the applicability of an exception to disclosure of a public record. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus. In *Jones-Kelley*, the Ohio Supreme Court held:

> Exceptions to disclosure under the Public Records Act, R.C. 149.43, are
> strictly construed against the public-records custodian, and the custodian

---

report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested." *See generally State ex rel. Neil v. French*, 2018-Ohio-2692, ¶ 10 (noting that pro se litigants are required to follow the same procedures as litigants represented by counsel, that pro se litigants are presumed to have knowledge of the law and legal procedures, and that pro se litigants are held to the same standard as litigants who are represented by counsel).

[2] Pursuant to R.C. 2743.75(F)(2), "[i]f either party timely objects, the other party may file with the clerk a response within seven business days after receiving the objection and send a copy of the response to the objecting party by certified mail, return receipt requested."

has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. (*State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006 Ohio 6714, 859 N.E.2d 948, ¶ 30, followed.)

*Kelley* at paragraph two of the syllabus.

**B. Requester's objections to the Report and Recommendation are not persuasive.**

{**¶9**} R.C. 2743.75(F)(2) requires that "[a]ny objection to the report and recommendation shall be specific and state with particularity all grounds for the objection. Here, Requester objects "to the portion of the Report concerning the denial of relief related to public records reflecting **vehicle impoundments tied to unpaid photo enforcement citations**." (Emphasis sic.) Requester states in the objections: "My intent has always been to obtain **existing enforcement records** — not data compilations or new reports — that reflect how unpaid photo-enforcement citations may lead to vehicle impoundment. The records I am seeking are limited in scope and critical to understanding how enforcement is administered." (Emphasis sic.)

{**¶10**} In the Report and Recommendation, the Special Master notes that Requester sought the following with respect to vehicle impoundments: "The number of vehicles impounded due to unpaid citations." (R&R, 6.) The Special Master has recommended that Respondent should not be required to take any further action on this request because Requester's request seeks information and therefore is unenforceable. (R&R, 7.)

{**¶11**} Under Ohio law a requester is required to identify with reasonable clarity the public records that a requester seeks. *See State ex rel. Glasgow v. Jones*, 2008-Ohio-4788, ¶ 17. In *State ex rel. Glasgow* the Supreme Court of Ohio explained:

"'[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.'" *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 29, quoting *State ex rel. Fant v. Tober* (Apr. 28, 1993), Cuyahoga App. No. 63737, 1993 Ohio App. LEXIS 2591, 1993 WL 173743,

* 1, affirmed in *State ex rel. Fant v. Tober* (1993), 68 Ohio St.3d 117, 1993 Ohio 154, 623 N.E.2d 1202.

*State ex rel. Glasgow* at ¶ 17; *see State ex rel. Ames v. Three Rivers Local School Dist. Recs. Comm'n.*, 2024-Ohio-2686, ¶ 18, citing *State ex rel. Glasgow* at ¶ 17.

{¶12} Additionally, under Ohio law a request for information is an improper request under R.C. 149.43. *State ex rel. Morgan v. City of New Lexington*, 2006-Ohio-6365, ¶ 30.

{¶13} There can be no failure to make a public record available without a proper request having been made first. *See State ex rel. Bardwell v. Cordray*, 2009-Ohio-1265, ¶ 5 (10th Dist.). In this case, Requester's, public-records request expressly asked for information, i.e., "[t]he number of vehicles impounded due to unpaid citations," which is an improper request under R.C. 149.43. *See State ex rel. Morgan*, *supra*, at ¶ 30. Moreover, Requester's contention that she had always intended to obtain existing enforcement records—not information—is of no consequence given that a requester's purpose for requesting and copying public records is immaterial. *See State ex rel. Consumer News Servs. v. Worthington City Bd. of Edn.*, 2002-Ohio-5311, ¶ 45 (stating that purpose in requesting to inspect and copy public records is irrelevant); *see also State ex rel. Fant v. Enright*, 66 Ohio St.3d 186 (1993), syllabus (holding that "[a] person may inspect and copy a 'public record,' as defined in R.C. 149.43(A), irrespective of his or her purpose for doing so"); *Gilbert v. Summit Cty.*, 2004-Ohio-7108, ¶ 10.

{¶14} Upon careful consideration, the Court determines that Requester's objections should be overruled. The Court further determines that the Special Master's recommendation that Respondent should not be required to take any further action on Requester's request for the number of vehicles impounded due to unpaid citations—and the Special Master's Report and Recommendation itself—are based on the ordinary application of statutory law and case law as they existed at the time of the filing of Requester's Complaint. *See* R.C. 2743.75(F)(1) (requiring a special master to submit to the Court a report and recommendation based on the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint"). In view of these determinations, the Court concludes that the Report and Recommendation should be adopted.

## III.    Conclusion

{¶15} Accordingly, for reasons set forth above, the Court OVERRULES Requester's objections and ADOPTS the Special Master's Report and Recommendation issued on April 30, 2025.  In accordance with the Special Master's recommendations, the Court

A. ORDERS Respondent to retrieve and produce, on a request by request basis, all records responsive to the requests reproduced in the Report and Recommendation's appendix or to certify, on a request by request basis, that no responsive records exist; [3]

---

[3] The Special Master attached the following Appendix to the Report and Recommendation:

**Appendix of Outstanding Records Requests**

"Any documents, reports, or studies regarding the decision-making process-for relocating photo-enforcement cameras from high accident areas to high traffic areas between 2016~2024"

"Any emails, memos, or other forms of communication between City of Dayton officials and the photo enforcement vendor(s) regarding signage compliance, public complaints,or revenue expectations."

Communications related to any changes in signage for photo enforcement areas, including discussions about compliance with Ohio State law on signage requirements."

"Any financial reports *or* documents indicating the revenue generated from photo enforcement cameras in these areas, including projections or discussions on revenue generation as a factor in their relocation."

"Annual financial reports detailing the total revenue generated by the photo enforcement program for each year from 2016 to 2024, broken down by location and camera."

"Any documents or communications related to compliance with state laws governing signage and the use of photo enforcement cameras."

"Documentation showing the placement of signage indicating the presence of photo enforcement cameras, including maps or reports verifying compliance with Ohio state laws on photo enforcement signage."

"Any records documenting reviews or audits of signage compliance conducted by the city or a third party."

"The contract(s) between the City of Dayton and any third-party vendor(s) responsible for managing and operating the photo enforcement system, including any amendments or revisions."

"Any documents outlining the terms of revenue-sharing agreements between the City of Dayton and the vendor(s), if applicable."

"Documents detailing the criteria used for the placement of photo enforcement cameras in specific locations."

B. ORDERS Respondent to take these actions within 30 days of the date of this Decision and Entry;

C. ORDERS Respondent to certify its performance of those actions within 40 days of the date of this Decision and Entry;

D. FINDS that Respondent violated R.C. 149.43(B)(1)'s mandate that records be produced within a reasonable period of time;

E. ORDERS that Requester is entitled to recover from Respondent the amount of the filing fee of twenty-five dollars and any other costs associated with the action that are incurred by the Requester, excepting attorney fees;

F. ORDERS that court costs are assessed against Respondent; and

G. DENIES all other relief sought by Requester.

The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
LISA L. SADLER
Judge

**Filed May 23, 2025**
**Sent to S.C. Reporter 6/5/25**

---

"Any records indicating the relocation of photo enforcement cameras between 2016 and 2024, including the justification for such relocations."

(R&R, 14-15.)